### BROWN v. ST. MARY'S TEMPLE NO. 5 S. M. T. UNITED BROTHERS OF FRIENDSHIP OF TEXAS.

#### No. 12664.

Court of Civil Appeals of Texas. Dallas.

March 4, 1939.

Rehearing Denied April 8, 1939.

Moursund, Ball, Moursund & Bergstrom and William E. Remy, all of San Antonio, for plaintiff in error.

J. L. Turner, of Dallas, for defendant in error.

BOND, Chief Justice.

This appeal is from a judgment entered by default, and the paramount question involved is the failure of the trial court to set aside the judgment on defendant's (plaintiff in error) motion for a new trial, presenting grounds of equity in defendant's failure to appear at the trial, and meritorious defense to plaintiff's (defendant in error) cause of action.

Plaintiff filed suit on June 10, 1937, in the nature of trespass to try title, seeking to recover the land and premises described as follows: "Situated lying and being in the City of Dallas, Texas, in Block 271/M according to Murphy & Bolanz official map of the said City (Dallas), fronting west on Good Street and running back parallel with Florence Street and bounded on the south by a 15 foot alley, running northeast from Good Street to Cantegral Street. Beginning on Good Street 137 feet from the northwest corner of said block and at a point of 137 feet along Good Street from the intersection of the south boundary line of Florence Street with the east boundary line of Good Street. Thence northeast along said alley 113 feet; thence northwest parallel with Good Street 32 feet; thence southwest parallel with Florence Street 113 feet to Good Street; thence southeast along Good Street 32 feet to the place of beginning, and is the same land conveyed to E. E. Brown, Trustee, by Eddie Joseph, Receiver on the 12th day of April, 1937, as per deed recorded in Vol. 2019, p. 23, Deed Records, Dallas County, Texas."

Citation was issued and duly served, and, on July 12, 1937, the defendant filed, in due order of pleadings, plea in abatement, general demurrer, special exceptions, general denial and plea of not guilty. The pleadings and exceptions each challenged the jurisdiction of the court for lack of proper and necessary party plaintiffs, in that plaintiff is nothing more than a subordinate lodge or temple of the Unit-

ed Brothers of Friendship of Texas, a fraternal benefit society, and has no life or existence separate and apart from said society, and is not authorized or entitled to maintain a suit separate and apart from and without joinder of said United Brothers of Friendship of Texas; and, that a suit is pending in the 126th Judicial District of Travis County, Texas, styled State of Texas v. United Brothers of Friendship of Texas, wherein a receiver was appointed for said Society, and has assumed charge and jurisdiction over it and all of its subordinate lodges and branches, including plaintiff, and that such receiver is a necessary and indispensable party to the suit.

On the status of the pleadings, on November 15, 1937, the court entered judgment by default in favor of plaintiff for title and possession of the land involved in the suit; and, at the same term of court, on hearing, overruled defendant's motion to set aside the judgment.

■ It is well settled in this state that a party complaining of a judgment by default must not only show that he was prevented from appearing and urging a defense at the time the judgment was entered by some fraud, accident, or mistake unmixed with negligence on his part, but, also, that he has a just defense to the action. Drinkard v. Jenkins, et ux., Tex. Civ.App., 207 S.W. 353; Wichita County Lumber Co. v. Maer, Tex.Civ.App., 235 S.W. 990; Stoudenmeier v. First Nat. Bank of Wichita Falls, Tex.Civ.App., 246 S.W. 761; Humphrey et al. v. Harrell et al., Tex.Com.App., 29 S.W.2d 963.

It will be seen that, defendant's motion shows that he was lulled into security by an alleged oral agreement with plaintiff's counsel that he would be notified when said cause was set for trial, thus, was not present when the judgment was entered; and that his title to the property in controversy is founded upon a receiver's quitclaim deed, executed in accordance with an order of a district court of Travis County, Texas, in quo warranto proceedings filed by Attorney General Wm. McCraw on behalf of the State of Texas, against United Brothers of Friendship of Texas, a private fraternal insurance corporation, in which a receiver was appointed, ex parte, "to take charge of the assets, business, and affairs of the defendant, and to wind up the business of the corporation under usages and practices of equity, and

to make such disposition of the business and membership of the corporation as in the discretion of the court may seem proper;" also, a temporary restraining order and injunction were granted "restraining and enjoining the defendant (United Brothers of Friendship of Texas), as well as all of its officers, agents, servants and employes from in any way interfering with said receiver in the conduct of his duties as such receiver and from disposing of or placing any lien or encumbrance upon any of the assets of defendant, United Brothers of Friendship of Texas", etc.

The motion further shows that the quo warranto proceeding was filed, the receiver appointed, and the injunction granted on March 2, 1937; and, on April 12, 1937, the receiver made application for, and the District Court of Travis County granted, ex parte, an order authorizing sale of: "(1) All of that certain real estate owned in fee or equities in real estate wherever the same may be located in the State of Texas and owned by the Grand Lodge of the United Brothers of Friendship of Texas or by any subordinate Lodge of said body, or by the Sister Lodge of said body known as the Sisters of the Mysterious Ten or by any Temple or body subordinate to the Grand Lodge, by whatever name the same may be known, save and except all that realty owned by the Grand Lodge or the subordinate Lodge of the United Brothers of Friendship of Texas, which is lying and situated in Jefferson County, Texas"; and, on the same day, the receiver executed to the defendant herein, a deed, releasing and forever quitclaiming unto the grantee "all the rights, title and interest of the United Brothers of Friendship of Texas, in and to that certain tract or parcel of land lying in the County of Dallas and State of Texas, described as follows, to wit: Lot 6, Block 305 City of Dallas, Texas. This property fronts 46 feet on Munger Street and runs through to front 46 feet on Ware Street, together with all interest held by * * * St. Mary Temple No. 5 * * * or held by any officer or trustee of the Order of the United Brothers of Friendship and Sisters of Mysterious Ten of Texas * * *." The deed is shown to be recorded in "Vol. 2000, p. 579, Deed Records of Dallas County, Texas".

The record shows that the legal and equitable title to lot 32 x 137 feet in Block 271/M, Murphy & Bolanz's official map,

fronting west on Good Street and running back parallel with Florence Street, which was the property involved in plaintiff's suit, was acquired by, and the deed vested title in "St. Mary's Temple No. 5 S. M. T. of the United Brothers of Friendship of Texas (Sisters of the Mysterious Ten)", subject to the provisions of the Constitution and By-laws of the Society, reading:

"Constitution. Article XX. Title to Property. Section 1. The title to all property, real, personal and mixed, acquired by any subordinate lodge, or by any subordinate Temple, by gift, devise, or purchase shall be vested in the Grand Master, and his successors in office, in trust for said subordinate Lodge, or subordinate Temple acquiring same. The possession of said property shall be with the subordinate Lodge, or Temple, and the rents and revenues, if any arising from said property, shall be the absolute property of the subordinate Lodge, or subordinate Temple, with the absolute right to use and dispose of as said subordinate Lodge or Temple may see proper, or in accordance with the By-laws of the subordinate Lodge or the subordinate Temple, so acquiring the same.

"Section 3. The Grand Master shall, upon the majority vote of the members of any subordinate Lodge or subordinate Temple, and not otherwise, have full authority to sell or otherwise dispose of any real estate or buildings held by him in trust for said subordinate Lodge or Temple. * * *

"Section 4: When any Lodge or any Temple shall from any cause become defunct, dissolved, or its charter revoked, then the fee to all and whatsoever, the property held in trust for said Lodge or Temple by the Grand Master, shall vest absolutely in the Grand Lodge, the same to be managed, controlled and disposed of by sale or otherwise by the Grand Master.

"Section 5. No Lodge or Temple shall become dissolved, or its charter revoked so long as seven members in good standing comply with the requirements of the law; or when a less number shall be found or when the Lodge or Temple shall fail and refuse to comply with the laws of the order, then it shall be the duty of the Grand Master to dissolve said Lodge, or Temple or revoke its charter as the case may be and at once, either in person or by deputized authority take possession of all and whatsoever, the property and effects of said Lodge or said Temple. * * *."

We think the judgment may well be affirmed, without extending discussion upon the question of negligence of the defendant in failing to appear and defend the suit. It affirmatively appears that defendant has no meritorious defense to plaintiff's cause of action for the land in question. "Courts of equity do not sit to remedy injuries wholly technical and insubstantial." Brown et al. v. Clippinger, 113 Tex. 364, 256 S.W. 254, 255.

It will be seen that, there is nothing in the record to show that plaintiff was guilty of any of the acts of omission or commission within the purview of the Constitution of the Society, so as to divest it of title to the property in controversy, or to confer authority on the Grand Lodge to sell by deed or otherwise, or encumber the lands acquired by its subordinate Lodge or Temple, or that the plaintiff had become "defunct, dissolved, or its charter revoked", as to vest the fee of its acquired property in the Grand Lodge. Therefore, the Grand Lodge had never acquired title to the property in controversy, and neither the receiver of its assets, nor the district court making the appointment, had jurisdiction over appellant and its property.

Where the legal title to land is taken in the name of the purchaser, with full understanding that the title shall vest in a trustee, and be divested out of such trustee only under and by virtue of certain contingencies, the contingencies are vested rights and must happen before title will pass from the trustee to its purchaser. The Constitution of the Society created only an express trust in the Grand Master of the Order in lands of its subordinate branches, subject to the equitable title in, and beneficial enjoyment of the cestui que trust. The defendant relied upon title to the land in suit as coming through the Grand Lodge, transferred through a receiver, whose title thereto was contingent on the subordinate Temple becoming "defunct, dissolved or its charter revoked". So, there being no contention in this case that the subordinate Temple, by "a majority vote of its members" had granted authority in its trustee, the Grand Master, to take charge of or sell its acquired property, and no evidence that the Temple had sold the property, or that it was "defunct,

dissolved, or its charter revoked", which contingencies would vest title in the Grand Lodge, we think the receiver acquired no greater right in the property than was held by the Grand Lodge. The happening of the conditions precedent only vests title to the property in such fiduciary trustee and not otherwise. So, whatever right the defendant in this case acquired in plaintiff's land, if any, in the suit of the State of Texas against the Grand Lodge, could not and did not affect the rights of the subordinate branch, not served with citation, and whose title to the property had never passed to the defendant in that suit.

■ Furthermore, it will be seen that defendant's quitclaim deed is to "Lot 6, block 305, City of Dallas, Texas. This property fronts 46 feet on Munger Street and runs through to front 46 feet on Ware Street * * *," deed recorded in "Vol. 2000, p. 579, Deed Records of Dallas County, Texas"; whilst plaintiff's decreed title is to an entirely different lot:—In block 271/M, Murphy & Bolanz official map of the City of Dallas, fronting 32 feet on Good Street and running parallel with Florence Street 137 feet, as per deed recorded in "Vol. 2019, p. 23, Deed Records of Dallas County, Texas". Obviously, the deed pleaded would not support a defense in trespass to try title to the other and different tract of land.

■ We are further of the opinion that the motion to vacate the judgment finds no support in the evidence as to merit an excuse for defendant's non-appearance at the time of trial. The evidence offered in support of this phase of the motion, shows that defendant was duly served with citation to appear and make answer to the July, 1937, term,—a regular term of the court; and, on July 12, he, through Attorneys Kelso, Locke & King, filed plea in abatement and answer; and, thereafter, through another attorney, Hon. S. P. Brooks, secured an agreement, in writing, from plaintiff's attorney, to pass the case over for the month of August, to be taken up during the September term of said court, and, for plaintiff's attorney to advise Kelso, Locke & King, at San Antonio, Texas, of the setting. The evidence further shows that the case was passed in accordance with the agreement, and the attorneys named notified of the setting, and its assignment on the court's docket, and, when regularly called for trial, plaintiff's attorney, not having heard from the defendant or his attorneys, with consent of the Court, passed the case to November 15, 1937. When the case was again called for trial, and neither the defendant nor his attorneys made their appearance, plaintiff announced ready, the cause was tried and judgment entered. Plaintiff's attorney testified that, long prior to the entry of the judgment, the defendant represented to him that he only had the month of August, 1937, to complete his plans as to the property involved, and, in case he did not so complete them, he would desist from further action thereon and not molest the plaintiff further, and would relinquish the property to the receiver; therefore, relying upon such representations, and not having heard from defendant's attorneys in response to his telegram, he appeared in the cause and sought the judgment.

Relief in such cases should not be granted unless the party seeking it can show clearly, to the satisfaction of the court, that he has a good defense which he was prevented from making by fraud, accident, or the acts of the opposing party, wholly unmixed with any fault or negligence on his part; he must be able to impeach the justice and equity of the judgment entered and to manifest clearly to the court that there is good ground to suppose that a different result will be attained. Where the final judgment of a court of competent jurisdiction has been once solemnly pronounced, it ought not to be lightly disturbed; there should be, at some period, an end to litigation.

It is our conclusion, after having made a careful study of plaintiff in error's excuse for not appearing for trial, and the defense offered, same presents no sufficient reason to set aside the judgment; therefore, judgment of the court below is affirmed.

Affirmed.